IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY LEE, | : | |
|     Plaintiff | : | CIVIL ACTION |
| | : | NO. 18-2504 |
| v. | : | |
| | : | |
| DUBOSE NATIONAL ENERGY | : | |
| SERVICES, INC., *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

Jones, II   J.                                                                                                                    April 24, 2019

## I. Introduction

Plaintiff Gregory Lee, a resident of the Commonwealth of Pennsylvania, filed this civil rights action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, along with various contract claims against his former employer, Dubose National Energy Services, Inc. ("DNES")[1]; Carl M. Rogers, CEO and Chairman of the Board of Directors of DNES; Richard Rogers, President of DNES; and Martin Kossick, Vice-President of DNES, (collectively, "Defendants"). Plaintiff claims he was terminated because of his age in violation of the ADEA and denied money that DNES owed him under various agreements.

In response to Plaintiff's First Amended Complaint, Defendants filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6)—the procedural mechanism by which a defendant moves for dismissal due to a plaintiff's failure to state a claim upon which relief can be granted. However, Defendants' Motion is based on their argument, not that Plaintiff failed to state a claim, but rather that Plaintiff failed to comply with a

---

[1] Incorporated under the laws of the state of North Carolina with offices in, among other places, Pennsylvania.

1

"Governing Venue" clause[2] (which, hereinafter, shall generally be referred to as "venue-selection clause") included in one of the agreements between Plaintiff and DNES (Mem. Supp. Mot. Dismiss 1-3). Because the nature of the Motion determines the standard of review and therefore shapes the analysis to be performed, this inconsistency is resolved as a threshold matter.

There has been disagreement regarding which specific type of Rule 12 motion is the proper mechanism for dismissal to enforce a forum[3] selection clause. *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 n.6 (3d Cir. 2001). In the Third Circuit, "12(b)(6) dismissal is a permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum."[4] *Id*. at 298. The clause at issue here, however, does not allow filing in another federal forum.[5] But Courts in this District have also granted dismissal under Rule 12(b)(6) based on clauses that preclude filing in another federal forum. *Wall St. Aubrey Golf, LLC v. Aubrey*, 05cv1163, 2005 U.S. Dist. LEXIS 27303, at *13-14 (W.D. Pa. Nov. 10, 2005) ("*Wall St. Aubrey Golf I*"), *affirmed Wall St. Aubrey Golf, LLC v. Aubrey*, 189 F. App'x. 82, 85 (3d Cir. 2006) ("*Wall St. Aubrey Golf II*"). Other courts in this District have granted dismissal based on such

---

[2] Defendants refer to the venue-selection clause as a forum-selection clause in their Motion to Dismiss. However, the word "forum" does not appear in the clause. Rather the word "venue" is used in the clause's title and in the clause itself. Thus, the clause shall be referred to as a venue-selection clause.

[3] This Court does not conflate forum-selection clauses and venue-selection clauses here. Rather, it finds the rationale applied to a forum-selection clause in the cited case instructive and equally applicable to a venue-selection clause.

[4] Transfer to another federal forum is preferred over dismissal. *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 60 (2013).

[5] See subsection IV.A.1 *infra* for the exact language. The clause specifically lays venue in Sampson County, North Carolina, in which no federal court is located. (Sampson County is in the Fayetteville Division of the Eastern District of North Carolina, which is headquartered in neighboring Cumberland County. *Court Locations*, U.S. Courts, North Carolina Eastern District (Mar. 26, 2019, 4:30 PM), https://www.nced.uscourts.gov/courtlocations/default.aspx).

2

clauses under Fed. R. Civ. P. 12(b)(3). *Relm Wireless Corp. v. C.P. Allstar Corp.*, 265 F. Supp. 2d 523, 524-25 (E.D. Pa. 2003) (cited as "illuminating" in *Wall St. Aubrey Golf II*, 189 F. App'x. at 86). Regardless of the procedural mechanism, under the doctrine of forum non conveniens, venue-selection clauses pointing to a state forum may be enforced. *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 60 (2013). Since defendants' Motion to Dismiss was made pursuant to Rule 12(b)(6), this Court's analysis shall be based on a Rule 12(b)(6) standard of review. *See Wall St. Aubrey Golf I*, 2005 U.S. Dist. LEXIS 27303, at *13 (employing the same reasoning), *affirmed Wall St. Aubrey Golf II*, 189 F. App'x. at 85.

Defendants also move under Fed. R. Civ. P. 12(f) to strike all reference to settlement discussions pursuant to Federal Rule of Evidence ("Fed. R. Evid.") 408. For the reasons set forth herein, Defendants' Motion to Dismiss shall be granted in part and denied in part and Defendants Motion to Strike shall be denied.

## II. Background[6]

Plaintiff, at all relevant times a citizen of Pennsylvania, was hired without a contract by DNES in April 2003 as a National Product Manager. (Am. Compl. ¶¶ 17, 19-24.) The home office of DNES, a provider of nuclear materials and services, is located in North Carolina. (Am. Compl. ¶¶ 4, 26.) DNES also maintains offices in Exton, Pennsylvania. (Am. Compl. ¶ 25.) During his employment with DNES, Plaintiff called on customers in Maryland, Pennsylvania, New York, New Jersey, Michigan and Canada. (Am. Compl. ¶ 27.)

Around January 2008, Plaintiff and DNES executed a Deferred Compensation Agreement ("DCA") "to reward and encourage the continued employment" of Plaintiff with

---

[6] All background information is derived from Plaintiff's Amended Complaint, exhibits appended thereto, and publicly available documents.

3

DNES. (Am. Compl. ¶¶ 34, 36 (quoting the DCA).) Plaintiff received $40,000 at the time of execution of the agreement. (Am. Compl. ¶ 36.) Plaintiff was further entitled to an additional $10,000 per year for ten years thereafter ("deferred compensation"), provided he was not terminated for cause during that period. *Id*. The additional $100,000 vested on the tenth anniversary of the DCA unless Plaintiff was terminated without cause prior to said anniversary, in which case he was entitled to prorated deferred compensation. *Id*. The DCA included non-compete and non-solicitation provisions that restricted Plaintiff upon conclusion of his employment unless he was terminated without cause. (Am. Compl. ¶¶ 37-38.) The DCA defined "for cause" termination and included a provision specifying the parties' choice of law and venue selection for any disputes. (Am. Compl. ¶¶ 34 (incorporating Def.'s First Mot. Dismiss, Ex. A (Deferred Compensation Agreement) (ECF No. 15-2) § 3.1), 36.)

On May 18, 2017, approximately nine and one-half (9 ½) years after execution of the DCA, Plaintiff, then over forty years old, was terminated by DNES. (Am. Compl. ¶¶ 32, 39-40.) Plaintiff contends his termination was without cause and he was owed commissions and expenses at the time of his termination. (Am. Compl. ¶¶ 29-31, 33, 39, 41.) DNES, upon Plaintiff's termination, issued Plaintiff a memorandum indicating DNES considered the termination to be "for cause," and therefore Plaintiff was not due any payment under the DCA. (Am. Compl. ¶¶ 43, 46.) The memorandum further indicated DNES was nevertheless willing to offer Plaintiff two ways to obtain deferred compensation. (Am. Compl. ¶ 46.) One option offered Plaintiff $40,000 immediately and $40,000 after one (1) year, contingent on compliance with the non-compete provision. *Id*. The other option offered Plaintiff $25,000 immediately and $25,000 at half-year intervals for a total of $100,000, contingent on compliance with an enlarged non-compete provision. *Id*. Plaintiff did not accept any option offered in the memorandum.

(Am. Compl. ¶ 51.) On June 1, 2017, CEO Carl Rogers issued Plaintiff a letter confirming Plaintiff's termination and withdrawing the offers for deferred compensation. (Am. Compl. ¶ 52.) Plaintiff avers his position was filled by one or more younger persons after his termination. (Am. Compl. ¶ 104.)

Plaintiff filed for unemployment benefits in Pennsylvania, which DNES opposed. (Am. Compl. ¶ 56.) A referee hearing was held, and the referee made findings of fact and conclusions of law to the effect that DNES failed to prove willful misconduct by Plaintiff. (Am. Compl. ¶ 57.)

On January 12, 2018, Plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") and served said charge on DNES as an attachment to a demand letter, which outlined Plaintiff's claims. (Am. Compl. ¶¶ 58-60.) On January 18, 2018, counsel for DNES responded, without acquiescing to Plaintiff's demand. (Am. Compl. ¶¶ 61-62.) Negotiations ensued and resulted in an agreement. (Am. Compl. ¶¶ 63-64.) After much delay, DNES reduced said agreement to writing but added new "poison pill" provisions, not previously discussed by the parties, which Plaintiff found to be materially adverse. (Am. Compl. ¶¶ 65-86.) Plaintiff promptly objected to the adverse new terms but affirmed the remainder (original portion) of the Settlement Agreement. (Am. Compl. ¶ 87.) Thereafter, DNES counsel with whom Plaintiff had been negotiating was replaced, and new counsel did not honor the original Settlement Agreement. (Am. Compl. ¶¶ 88-91.) New negotiations began and dragged on for more than a month until DNES "secretly" filed a declaratory judgment action on May 31, 2018 in North Carolina State Court. (Am. Compl. ¶ 91.) In said action, DNES sought a declaration that Plaintiff was terminated for cause; DNES does not owe Plaintiff any money; DNES did not violate the ADEA in terminating Plaintiff; and,

5

DNES is entitled to costs and attorney's fees. (Am. Compl. ¶ 91; DNES Compl.,[7] Ad Damnum Section[8] ¶¶ 1-4.)

On June 15, 2018, Plaintiff commenced this action. (ECF No. 1.) Count I of his Amended Complaint is a claim against DNES alone for terminating Plaintiff in violation of the ADEA. (Am. Compl. ¶¶ 105-113.) Count II alleges a claim against all Defendants under Pennsylvania's Wage Payment and Collection Law, 43 Pa.C.S.A. §§ 260.1 *et seq.* for breach of Plaintiff's implied-in-fact employment contract[9] and the DCA. (Am. Compl. ¶¶ 114-126.) Count III alleges a claim against all Defendants under Pennsylvania's Wage Payment and Collection Law, 43 Pa.C.S.A. §§ 260.1 *et seq.* for breach of the Settlement Agreement. (Am. Compl. ¶¶ 127-134.) Count IV alleges a claim against all Defendants for breach of the covenant of good faith and fair dealing with respect to the DCA. (Am. Compl. ¶¶ 135-153.) Count V alleges a claim against all Defendants for breach of the covenant of good faith and fair dealing with respect to the Settlement Agreement. (Am. Compl. ¶¶ 154-174.) Count VI alleges a claim against all Defendants for fraudulent handling of the settlement negotiations. (Am. Compl. ¶¶ 175-195.)

---

[7] DNES filed its Complaint in the Superior Court Division of the General Court of Justice in Sampson County, North Carolina. *DuBose National Energy Services, Inc. v. Gregory J. Lee*, Case No. 18-CVS-551.

[8] For clarity, this Court specifically references the sole ad damnum (Wherefore) section of DNES's state-court Complaint because the paragraph numbering therein is independent of the paragraph numbering in the balance of the Complaint.

[9] After four and one-half years of continuous employment, *see supra* Part II, the conduct of the parties can be said to have created an implied employment contract. *See Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionery & Tobacco Workers Int'l Union*, 28 F.3d 347, 358 n.19 (3d Cir. 1994).

### III. Standards of Review

#### A. Rule 12(b)(6) Motion to Dismiss

In deciding a Rule 12(b)(6) motion, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Phillips*, 515 F.3d at 233 (internal quotation marks and citation omitted). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]ll civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

#### B. Rule 12(f) Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "Content is immaterial when it has no essential or important relationship to the claim for relief. Content is impertinent when it does not pertain to

7

the issues raised in the complaint. Scandalous material improperly casts a derogatory light on someone, most typically on a party to the action." *Griswold v. Coventry First LLC*, CIVIL ACTION NO. 10-5964, 2015 U.S. Dist. LEXIS 19455, at *19 (E.D. Pa. Feb. 18, 2015) (internal citations and alterations omitted).

"The standard for striking a complaint or a portion of it is strict, and 'only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'" *Steak Umm Co., LLC v. Steak'Em Up, Inc.*, No. Civ.A.09-2857, 2009 U.S. Dist. LEXIS 101357, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009) (citing *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004)). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). Although "[a] court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," such motions are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *River Road Dev. Corp. v. Carlson Corp.*, No. Civ.A.89-7037, 1990 U.S. Dist. LEXIS 6201, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990). Thus, striking a pleading or a portion of a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice." *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (quotations omitted).

**IV. Discussion**

**A. Motion to Dismiss**

Defendants argue Count II and Count IV of Plaintiff's Amended Complaint, which seek relief for breach of the DCA, should be dismissed because Plaintiff filed in the wrong forum, in

violation of the DCA's venue-selection clause.[10] (Mem. Supp. Mot. Dismiss 6-7, 12.) To that end, Defendants argue the clause is valid, enforceable, and controlling with respect to Counts II and IV. *Id*. at 7-11. Defendants further contend Plaintiff's other contract claims—contained within Counts III, V, and VI—should also be dismissed because Plaintiff included them to manufacture venue and they "advance claims that are closely intertwined with Count II," which Plaintiff is contractually bound to litigate in North Carolina because of the DCA venue-selection clause. *Id*. at 11-12. Defendants further contend Plaintiff's ADEA claim, Count I, should likewise be dismissed because it, too, is closely intertwined with Plaintiff's contract claims and North Carolina courts are capable of litigating federal discrimination claims. *Id*. at 13-14.

1. **DCA Claims**

In reply to Defendants' argument regarding the DCA's venue-selection clause, Plaintiff does not challenge the validity of the clause. (Pl.'s Reply 3 (ECF No. 21).) Rather, he challenges the scope or applicability of the clause. *Id*. He argues it "does not govern this action" because "this action does not concern a need to construe the DCA." *Id*. Plaintiff's argument, however, is not persuasive with respect to his DCA claims.

The venue-selection clause of the DCA, which is coupled with a choice-of-law clause, reads as follows: "<u>Governing Law/Venue.</u> This Agreement shall be construed in accordance with the laws of the state of North Carolina, and venue shall be considered the county of Sampson, state of North Carolina." (Def.'s Mot. Dismiss, Ex. 1 (Deferred Compensation Agreement) (ECF No. 19-3) § 3.1.) This Circuit has analyzed similar challenges to essentially identical venue-selection clauses in the past and found them to be applicable and binding. *Relm*

---

[10] Most of the paragraphs in Count II concern the DCA, but not all. Count II also contains a claim for money allegedly owed Plaintiff pursuant to his employment agreement with DNES.

*Wireless Corp. v. C.P. Allstar Corp.*, 265 F. Supp. 2d 523, 524-25 (E.D. Pa. 2003) (dismissing pursuant to Fed. R. Civ. P. 12(b)(3) a contract claim filed in the Eastern District of Pennsylvania, which has courthouses in Philadelphia, Berks, Lehigh, and Northampton counties, where the contract contained a venue-selection clause that read as follows: "'This Agreement shall be construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania with venue in Chester County'" and holding "the clause makes perfectly clear that venue shall be in Chester County -- and this courthouse is not in Chester County"); *Wall St. Aubrey Golf II*, 189 F. App'x. at 85 (affirming dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), of a venue-selection clause that stated: "'This [contract] shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, with venue laid in Butler County, Pennsylvania'" and holding that it "admits of no other result than that the courts of Butler County are the exclusive forum in which the parties may obtain adjudication under their contract") (citing, as instructive, *Relm Wireless Corp.*, 265 F. Supp. 2d at 524-25). This Court will "not torture the language [of the clause] to create ambiguities." *Wall St. Aubrey Golf II*, 189 F. App'x. at 85. Since Plaintiff is seeking to recover damages owed him pursuant to the DCA by suing for breach of the DCA, Am. Compl. ¶¶ 117, 118, 121, 126, he is contractually obligated to litigate same in accordance with the venue-selection clause included in the DCA. *Wall St. Aubrey Golf II*, 189 F. App'x. at 85.

      Plaintiff argues DNES breached the DCA, which contains the venue-selection clause. However, breach of the substantive provisions of a contract does not impact the validity of such clauses. *Accord Friday & Cox, LLC v. FindLaw*, Civ. Action No. 18-532, 2018 U.S. Dist. LEXIS 138655, at *15 (M.D. Pa. Aug. 16, 2018) (holding a forum-selection[11] provision is "a

---

[11] *See supra* n.3.

separate agreement, the validity of which is not a function of the validity of the agreement in which it was included" and noting that "if allegations of material breach invalidated forum-selection clauses, [such] clauses would never be enforceable"); *see also TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 752 F. Supp. 2d 517, 535 (E.D. Pa. 2010).

Plaintiff also hints at an imbalance of power or procedural unconscionability in the formation of the DCA when he alleges the DCA was drafted solely by DNES. (Am. Compl. ¶ 35.) However, such an allegation is not enough to establish unconscionability, therefore it does not call into question the validity of the venue-selection clause. *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 488-489 (E.D. Pa. 2011).

Plaintiff's DCA-related claims—part of Count II[12] and Count IV—shall therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### 2. Other State Law Claims

Defendants argue this Court should dismiss Plaintiff's remaining state law claims because they are closely intertwined with his DCA claims, which, pursuant to the DCA venue-selection clause, must be litigated in North Carolina. (Mem. Supp. Mot. Dismiss 11-12.) Defendants are essentially requesting piggy-back treatment of Plaintiff's remaining state law claims, asking this Court to decline to exercise supplemental jurisdiction over them, and dismiss them along with his DCA claims. *Id.* Defendants' arguments, however, are not persuasive because they are bald and conclusory.

Defendants failed to shoulder their burden of convincing this Court to dismiss Plaintiff's remaining state law claims. Where a venue-selection clause is involved and a plaintiff did not

---

[12] *See supra* n.10. Count II includes claims unrelated to the DCA. (Am. Compl. ¶¶ 119-120.) Those claims are not dismissed as a result of the foregoing analysis.

comply with that clause, the plaintiff has the burden of showing that venue is proper. *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 63-64 (2013). However, where no such clause is involved, as here with Plaintiff's non-DCA-related state law claims, the defendant, as movant, bears that burden. *See Atofina Chems., Inc. v. Sierra Chem. Co.*, CIVIL ACTION NO. 03-2528, 2004 U.S. Dist. LEXIS 11836, *23 (E.D. Pa. Apr. 5, 2004); *Daughtry v. Family Dollar Stores, Inc.*, 634 F. Supp. 2d 475, 477 (D. Del. 2009) ("The moving party has the burden of proving that venue is improper."). "Neither bald assertions nor vague and conclusory allegations [by defendants] will be accepted as true." *Banegas v. Hampton*, CIVIL ACTION NO. 08-5348, 2009 U.S. Dist. LEXIS 34882, at *7 (E.D. Pa. Apr. 23, 2009) (quotations omitted). *See also Nunn v. Braden Mfg.*, CIVIL ACTION NO. 93-4875, 1993 U.S. Dist. LEXIS 16584, at *6 (E.D. Pa. Nov. 24, 1993) (rejecting a defendant's conclusory objections to venue as "wholly insubstantial and completely unsupported"). Here, Defendants' arguments are bald and conclusory. Therefore, they are rejected. *Banegas*, 2009 U.S. Dist. LEXIS 34882, at *7.

Furthermore, while all of Plaintiff's claims are connected insofar as they relate to his employment with DNES, it does not necessarily follow that the three different contracts at issue—the implied employment agreement, the DCA, and the settlement agreement—are inextricably intertwined for litigation purposes. The pleadings indicate each agreement has an independent set of terms. The terms of the employment agreement were defined by the parties' performance over time. The terms of the DCA are spelled out in the written DCA contract. And the terms of the settlement agreement are contained in the parties' negotiation communications. With distinct sets of terms for each agreement, Defendants' conclusory arguments do not persuade this Court that Plaintiff's remaining (non-DCA-related) contract claims (Counts III, V, VI, and the remaining parts of Count II) cannot or should not be litigated separate and apart from

his DCA claims. Furthermore, although the settlement agreement was meant to resolve "all matters between the parties" (Am. Compl. ¶ 62), including the potential EEOC claim and the potential DCA claim, the questions of whether the settlement agreement was formed, and, if so, whether it was breached, would not depend on the underlying claims. Notwithstanding, this Court shall assess the propriety of its potential exercise of supplemental jurisdiction over said claims.

Section 1367 of Title 28 of the United States Code authorizes district courts to exercise supplemental subject-matter jurisdiction over state law claims that are closely related to claims over which the district courts naturally have subject-matter jurisdiction. 28 U.S.C. § 1367(a). "[S]ubsection (c) lists certain categories of situations in which a district court, properly vested with supplemental jurisdiction, has discretion not to exercise that jurisdiction." *Russ v. State Farm Mut. Auto. Ins. Co.*, 961 F. Supp. 808, 817 (E.D. Pa. 1997). For example, if the claims raise complex questions of state law, or if the state law claims substantially predominate over the federal claims, the court "may decline to exercise supplemental jurisdiction." 28 U.S.C. § 1367(c). Here, with roughly four remaining state-law contract claims involving multiple contracts, and one straightforward federal claim, the state law claims substantially predominate over the federal claim. Thus, pursuant to § 1367(c), this Court has discretion regarding its exercise of supplemental jurisdiction over said state-law claims. To inform its exercise of discretion, this Court looks to the factors normally weighed in the context of motions for transfer of venue pursuant to 28 U.S.C. § 1404.[13]

---

[13] When evaluating a Rule 12 motion to dismiss, as opposed to transfer, premised on forum principles, *see supra* n.3, a district court in this Circuit *need not* consider the § 1404 venue-transfer factors. *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 299 (3d Cir. 2001). However, district courts *may sua sponte* consider the § 1404 factors when ruling on Rule 12 motions. *Salovaara*, 246 F.3d at 299 (3d Cir. 2001). This Court chooses to consider them.

The § 1404 factors, also known as *Gilbert* factors,[14] are divided into two categories: private interest and public interest factors.[15] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The private interest factors include: plaintiff's choice of forum, defendant's choice of forum, where the claims arose, physical and financial convenience of the parties, convenience of the witnesses, and location of relevant records. *Id.* Here, each party prefers its own local court, therefore their respective forum choices cancel each other out. Regarding the situs of the respective claims: Plaintiff's remaining (non-DCA-related) contract claims (Counts III, V, VI, and the remaining parts of Count II) concern breach of his implied employment agreement and breach of a settlement agreement that resulted from post-termination negotiations. Defendants allegedly breached both agreements in North Carolina and Plaintiff was allegedly injured by both breaches in Pennsylvania, therefore his related claims arguably arose in both locations. Thus, consideration of the situs of the claims is also a wash. Both parties would be physically inconvenienced by having to litigate in the other party's forum but inasmuch as Defendants are more numerous, the magnitude of their physical inconvenience would be greater. Plaintiff avers, and the *pro se* nature of his Answer to DNES's North Carolina suit indicates, that Plaintiff would be more financially inconvenienced by litigating in North Carolina than Defendants would be by litigating in Pennsylvania. Finally, the parties gave this Court little information to indicate that consideration of the witness-convenience and record-location factors,

---

[14] *See Delta Air Lines, Inc. v. Chimet, S.P.A.*, 619 F.3d 288, 295 (3d Cir. 2010) (referring to the factors as "Gilbert factors"). The factors were originally articulated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). They derive from forum non conveniens doctrine. *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 50 (2013).

[15] The § 1404 factors compare the parties' preferred fora because they are factors normally used in evaluating motions for transfer of venue. Here, Defendants request dismissal, not transfer, but they anticipate that Plaintiff may refile in North Carolina. Therefore, this Court's analysis compares the merits of proceeding in this Court with the merits of proceeding in North Carolina state court.

both of which should only be considered if they are prohibitive, *id*., would add anything to the analysis.

The public interest factors include: enforceability of the judgment, practical considerations that could streamline the trial, the respective court congestion of the two fora, local interest in deciding local controversies, public polices of the fora, and familiarity of the trial judge with the relevant law. *Id*. The pleadings indicate Defendant DNES has a place of business in the Eastern District of Pennsylvania and therefore has ongoing contacts with this jurisdiction, whereas, aside from lawsuits, the pleadings do not indicate Plaintiff has any contact with North Carolina. Thus, the judgment-enforceability factor favors Plaintiff's choice of forum. Inasmuch as it is easier and less expensive for the smaller party to commute for trial,[16] the ease of trial prong of the practical-consideration factor favors litigation in North Carolina courts. Aside from a conclusory opinion, Defendants furnished no information regarding the relative levels of congestion of the fora,[17] so, the court-congestion factor shall not be considered. Both fora have an interest in deciding local controversies and, policy-wise, both fora value the proper and faithful execution of contracts. Thus, the local-interest and public-policy factors are neutral. Finally, while North Carolina state courts may be more familiar with the law concerning fraud and contracts, two of Plaintiff's remaining contract claims were brought pursuant to the Pennsylvania Wage Payment and Collection Law, 43 Pa. C.S.A. §§ 260.1 *et seq*., with which this Court would be more familiar.

On balance, the § 1404 factors favor neither party. Without weight to tip the scale in Defendants' favor, Plaintiff's choice of venue as to his remaining state law claims shall not be

---

[16] The practical-consideration factor is considered in an absolute or objective sense, independent of affordability—which is a private interest factor considered above.
[17] Defendants' burden is discussed in subsection IV.A.2, *supra*.

disturbed. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) ("[I]n ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed."). Defendants' Motion to Dismiss shall therefore be denied as it relates to Plaintiff's non-DCA-related contract claims (Counts III, V, VI, and the employment agreement potions of Count II).

    **3. Federal Claim**

Defendants also requests piggy-back treatment of Plaintiff's federal claim. (Mem. Supp. Mot. Dismiss 13-14.) Defendants argue Plaintiff's federal claim is substantially related to all of his state law claims, so it should be dismissed along with said claims. *Id*.

First, this Court is not dismissing all of Plaintiff's state law claims so Defendants' argument is no longer applicable. Notwithstanding, this Court acknowledges that, as Defendants point out, state courts are capable of adjudicating federal claims. However, Defendants have not shown sufficient overlap between whether Plaintiff's termination was discriminatory and whether the parties' contracts were breached to justify denying Plaintiff his choice of forum for his federal claim. Therefore, Defendants' Motion to Dismiss, as it relates to Count I (ADEA Claim) of Plaintiff's Amended Complaint shall be denied.

   **B. Motion to Strike**

Defendants move under Fed. R. Civ. P. 12(f) to strike all references to settlement discussions contained in Plaintiff's Amended Complaint pursuant to Fed. R. Evid. 408. (Mem. Supp. Mot. Dismiss 14-15.) Fed. R. Evid. 408 prohibits the use of settlement negotiations to prove or disprove the validity or amount of an *underlying* claim—the claim which the parties attempted to settle, not the settlement agreement itself. *BTG Int'l Inc. v. Bioactive Labs*., CIVIL ACTION NO. 15-04885, 2016 U.S. Dist. LEXIS 83525, *31 (E.D. Pa. Jun. 28, 2016) ("[S]ettlement discussions are permissible in some circumstances, e.g., if they are offered for a

purpose other than to prove liability or the validity of an underlying claim."). To hold otherwise would result in an end-run around settlement agreements since any party could agree to settle, breach that agreement, and then assert that the agreement cannot be analyzed pursuant to Rule 408. Counts III and V of Plaintiff's Amended Complaint assert claims for breach of the settlement agreement itself. As such, references to the settlement agreement as they pertain to those claims shall not be stricken pursuant to Defendants' Motion. However, Fed. R. Evid. 408 would prohibit Plaintiff from asserting any information related to the settlement agreement in advancing his underlying claims.

### C. Abstention

Defendants argue there is a risk of conflicting judgments arising from the concurrent North Carolina and federal proceedings, and said risk weighs in favor of dismissal of Plaintiff's action in this court. (Reply Supp. Mot. Dismiss 2-3 (ECF No. 22-2).) They contend federalism and practicality concerns compel relinquishment of jurisdiction by this Court. *Id*. at 3. Though Defendants acknowledge the first-filed rule does not apply here, *Id*. at 2, they essentially argue this Court should dismiss in deference to the North Carolina action because it was filed first. *Id*. at 3 (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1172 (11th Cir. 1982)). Defendants are correct the first-filed rule does not apply here—it applies in cases of concurrent federal jurisdiction, not cases of concurrent federal-state jurisdiction. *3G Wireless, Inc. v. Metro PCS Pa. LLC*, CIVIL ACTION NO. 15-6319, 2016 U.S. Dist. LEXIS 24283, at *20-21 (E.D. Pa. Feb. 29, 2016). However, abstention principles articulated by the Supreme Court in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) are applicable here.

> *Colorado River* abstention provides that, under exceptional circumstances, a federal court may abstain from its otherwise virtually unflagging

> obligation to assert jurisdiction over a case because (1) there is a parallel
> case in state court, and (2) after carefully balancing a series of factors
> heavily weighted in favor of the exercise of jurisdiction, maintaining the
> federal case would be a waste of judicial resources.

*Golden Gate Nat'l Senior Care, LLC v. Minich*, 629 F. App'x. 348, 349-350 (3d Cir. 2015) (alterations and quotations omitted) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 13-16, 19); *see Colo. River*, 424 U.S. at 817-18. First, the district court should determine whether the federal and state proceedings are, in fact, parallel. *Golden Gate*, 629 F. App'x. at 350. If they "involve the same parties and substantially identical claims, raising nearly identical allegations and issues," they are parallel. *Id*. Here, there is substantial overlap between the parties, claims, allegations, and issues in the two proceedings, but they are not identical. The federal proceeding involves more parties and more claims than the state proceeding. Assuming arguendo, the proceedings are similar enough to be considered "substantially identical" or "nearly identical," the court next balances several factors to determine if abstention is warranted. *Id*.

The abstention doctrine directs courts to consider "(1) in an in rem case, which court first assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Id*. This is not an in rem case so the first factor does not apply. The federal forum is convenient for the Plaintiff and inconvenient for the Defendants. The state forum is just the opposite. Thus, the second factor does not weigh in favor of abstention. "[T]he mere possibility of piecemeal litigation cannot justify *Colorado River* abstention, absent a strongly articulated *congressional policy* against piecemeal litigation in the specific context of

the case under review." *3G Wireless*, 2016 U.S. Dist. LEXIS 24283, at *24 (internal quotations omitted) (citing *Ryan v. Johnson*, 115 F.3d 193, 198 (3d Cir. 1997)). Here, no such policy is cited by Defendants, so the third factor does not support abstention. Defendants filed in North Carolina before Plaintiff filed in this Court, so the North Carolina court obtained jurisdiction first. Thus, the fourth factor supports abstention. Federal and state law are both invoked in this case, so the fifth factor does not support abstention. The sixth factor—whether the state court will adequately protect the interests of the parties—is "generally a one-way ratchet, serving only to weigh against abstention where a state court is incapable of protecting a party's interests." *Golden Gate*, 629 F. App'x. at 352. "With no indication [here that] the state court cannot adequately protect the parties' interests, this factor is attributed no weight." *3G Wireless*, 2016 U.S. Dist. LEXIS 24283, at *25.

Therefore, the only factor supporting abstention is the fourth factor—the order in which jurisdiction was obtained. The fourth factor alone is not enough, however, to outweigh the lack of perfect symmetry between the state and federal proceedings, the federal courts' obligation to assert jurisdiction, and the heavy finger on the side of the scale that opposes abstention. *Golden Gate*, 629 F. App'x. at 349-50. Were this Court to treat the fourth factor as determinative, it would turn the first-filed factor into the first-filed rule, which, as indicated *supra*, does not apply here. This Court cannot conclude the fact that the North Carolina action was filed first presents the requisite "exceptional circumstances" that justify *Colorado River* abstention and therefore concludes abstention is not appropriate. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).

## V. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss shall be granted as to Plaintiff's DCA claim and denied as to all other claims, and Defendants' 12(f) Motion to Strike shall be denied.

An appropriate Order follows.

BY THE COURT:

*/s/ C. Darnell Jones, II*
C. Darnell Jones, II     J.